UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:13cr127(HBF) |
| v. | : | |
| KRYSTOPHER DIBELLA | : | September 27, 2013 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.   BACKGROUND**

On June 24, 2013, the defendant, Krystopher DiBella, waived his right to be indicted and pleaded guilty to a one-count Information charging him with the misdemeanor offense of aiding and abetting the failure to make a proper entry on an ATF 4473 form, in violation of 18 U.S.C. §§ 2, 922(m) and 924(a)(2)(B). Specifically, the Information charged:

> On or about March 15, 2010, in the District of Connecticut, the defendant KRYSTOPHER DIBELLA, then an employee of Riverview Gun Sales, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly failed to make a proper entry on a 4473 form by failing to have a purchaser of a firearm, who was a non-immigrant alien, answer the question regarding United States citizenship, an entry which is required under Section 923 of Title 18, in violation of Title 18, United States Code, Sections 2, 922(m) and 924(a)(3)(B).

In pleading guilty, the defendant entered into a written plea agreement. In that agreement, the parties stipulated that the base offense level was 6 because the offense of conviction in this case was a violation of 18 U.S.C. § 922(m). With a two-level reduction for acceptance of responsibility, the total offense level was 4. The parties stipulated that the defendant fell into Criminal History Category I, so that the guideline incarceration range for the offense was 0-6 months' incarceration. The parties also agreed to seek a sentence of three years' probation at sentencing. In particular, the agreement stated, "The defendant will seek a sentence of three

years' probation, and the Government will not object to this request. The parties agree that a sentence of three years' probation is appropriate and reflects a proper balancing of the factors set forth under 18 U.S.C. § 3553(a)." The defendant waived his right to appeal and collaterally attack his conviction and sentence provided that the total effective sentence did not exceed three years' probation and a $5,000 fine. Finally, the defendant agreed to the following special condition of probation:

> [T]he defendant explicitly agrees as a special condition of probation that, during the three-year term of his probation for this offense, he will not apply to be an FFL or a responsible party for an FFL, i.e., he will not make application for a federal license to engage in the business of importing, manufacturing, or dealing in firearms or ammunition either in his own name or in the name of any other individual, corporation, company, association, firm, partnership, society, joint stock company or other entity.

Had this case proceeded to trial, the Government would have proven the following: In 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted a periodic inspection of Riverview Gun Sales ("Riverview"), located in East Windsor, Connecticut, and uncovered hundreds of record-keeping violations, including the transfer of firearms without proper background checks, the failure to report multiple handgun sales, and the false entry of information in the acquisition and disposition ("A&D") records. Riverview was owned by David Laguercia and was one of the highest volume gun dealers in the state. Also in 2011, a young man named Jordan Marsh stole approximately 12 firearms on separate occasions from Riverview. After receiving a sentence of probation in state court, Marsh returned to Riverview on December 11, 2012 and stole a Windham Weaponry Inc. 5.56 caliber rifle right off of the front counter of the store despite the presence of several employees behind the counter. He then returned to the store on December 15, 2012 and was arrested after attempting to steal a Bushmaster .50 caliber rifle. And, on December 14, 2012, Adam Lanza used a Bushmaster .223 caliber semi-automatic rifle

that his mother purchased from Riverview to murder 20 children and six adults at Sandy Hook Elementary School in Newtown, Connecticut.

ATF executed a search warrant at Riverview on December 20, 2012 and seized hundreds of documents related to the transfer of firearms from Riverview over the past several years. From approximately January 2010 through December 2012, Riverview committed various violations of 18 U.S.C. §§ 922(m), 922(t) and 923(g). In particular, there were about 300 separate examples of false or missing information in its A&D records. In addition, there were at least two instances in which individuals received firearms prior to receiving approval from the national instant criminal background check system ("NICS"). Riverview also violated 18 U.S.C. §§ 923(g)(3)(A) and 923(g)(6) both by failing to report the multiple sales of handguns and by failing to report the theft of the firearm Marsh stole on December 11, 2012. As to the Marsh firearm, although the police recovered it on December 17, 2012 and advised Riverview of this fact, no one ever reported the firearm as stolen or conducted an inventory of the firearms in the store. In fact, as late as December 28, 2012, when the ATF tracing center contacted Riverview, a Riverview employee reported that the Marsh firearm was still in the store's inventory.

As one of Riverview's most trusted and experience employees, the defendant was involved directly in some of these violations, though he was not working in the store by the time Marsh engaged in the theft of additional firearms in December 2012. The defendant worked for Riverview for approximately four years and was terminated in August 2012. He often signed the 4473 forms and negotiated many of the sales for which ATF later found record-keeping violations. The three-page ATF Form 4473 comes with more than three-and-a-half pages of detailed instructions on how it must be completed, and, during his time at Riverview, the defendant filled out countless numbers of them. While working at Riverview, he transferred firearms on several

3

occasions without first requiring the transferee to complete all transferee sections or licensee sections of the form.  For example, on June 19, 2010, the defendant transferred a firearm to an individual without first requiring that person to provide a response to ATF Form 4473 Question 11.e., which asks if the purchaser is an unlawful user of, or addicted to, an illegal drugs; on May 11, 2010, the defendant transferred a firearm to an individual without first requiring him to provide a response to ATF Form 4473 Question 11.d., which asks if the purchaser is a fugitive from justice; on March 18, 2010, he transferred firearm(s) to an individual without first completing ATF Form 4473 Box 30.a. which requires the firearm transferor to indicate how many firearms are being transferred during this transaction; on February 25, 2010, the defendant transferred a firearm to an individual and incorrectly indicated on the ATF Form 4473 Box 30.a. how many firearms were being transferred during that transaction.

In addition, a separate investigation by ATF discovered (and the defendant has since admitted) that, during his employment at Riverview, the defendant sold ammunition on at least two occasions to a person whom he had reason to believe was a felon.  The defendant also allowed this individual to handle firearms both while he was in the Riverview store and at a local firing range.

And from 2010 through 2012, Riverview transferred approximately 32 handguns to a federal firearms dealer ("FFL") in Northborough, Massachusetts named "Tite Group" for sale to individuals who resided in Massachusetts.  Although the possession or purchase of these handguns did not violate Massachusetts state law, for approximately 23 of the handguns, their sale was prohibited by Massachusetts state law.  Regulations in Massachusetts require that any handgun sold appear on an approved firearms roster and, in addition, comply with separate regulations issued by the Massachusetts Attorney General.  Handguns that do not comply with

these regulations cannot be sold in Massachusetts. Several Riverview customers who lived in towns close to the Connecticut border, purchased non-compliant Massachusetts firearms from Riverview and then completed the transactions, as is required, at a Massachusetts FFL. These customers claimed that, despite the fact that they preferred to use a Massachusetts dealer close to their homes in the Springfield, Massachusetts area, they were sent either by Laguercia or the defendant specifically to Tite Group and advised that Tite Group handled all of Riverview's Massachusetts handgun sales.

The specific charge in the Information in this case is based on a single firearms transaction that occurred on March 15, 2010. On that date, the defendant transferred a firearm to an individual without first requiring that person to provide his United States-issued Alien/Admissions Number in Box 15 of ATF Form 4473. Box 15 must be completed when the transferee indicates in Box 14 that he is not a United States citizen. In fact, the purchaser did not have an Alien Number or an Admissions Number. He was a citizen of Jamaica and a non-immigrant alien and was prohibited by the federal Gun Control Act from possessing firearms.

The PSR found that the base offense level, under Chapter Two of the November 1, 2012 version of the Sentencing Guidelines, was 6 under U.S.S.G. § 2K2.1(a)(8). See PSR ¶ 16. After a two-level reduction for acceptance of responsibility, it determined that the total offense level was 4. See PSR ¶¶ 23-24. As to the defendant's criminal record, the PSR found that the defendant had accumulated no criminal history points and, therefore, fell into Criminal History Category I. A total offense level of 4, with a Criminal History Category I, results in a guideline range of 0-6 months.

The defendant has submitted a sentencing memorandum which does not dispute the findings of fact and guideline calculations set forth in the PSR. In his memorandum, the defendant

asks the Court to impose a sentence of three years' probation. By this memorandum, the Government likewise seeks a sentence of three years' probation.

## II. DISCUSSION

After the Supreme Court's holding in United States v. Booker, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." See United States v. Fernandez, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. See Rita v. United States, 127 S. Ct. 2456, 2459 (2007). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." United States v. Canova, 412 F.3d 331, 350 (2d Cir. 2005).

6

In the Government's view, a total effective sentence of three years of probation is sufficient, but no greater than necessary to serve the purposes of a criminal sanction in this case. First, the offense conduct in this case involved record-keeping violations of the federal firearms laws. Despite the defendant's mild characterization of his conduct in his sentencing memorandum, it bears pointing out that Riverview Sales, where the defendant was a key employee for several years, repeatedly violated the record keeping requirements under 18 U.S.C. § 923. Among these violations were numerous examples of improperly completed 4473 forms, the repeated failure to report multiple handgun sales, and the transfer of firearms prior to receiving proper authorization from the NICS system. Moreover, Riverview transferred over 20 handguns that were not compliant with Massachusetts regulations to one particular Massachusetts gun dealer for sale to Massachusetts residents who had traveled down to Riverview to select handguns they would have been unable to purchase in Massachusetts. This defendant is certainly not responsible for all of Riverview's failings, but he was directly involved in several of the sales involving improperly completed 4473 forms and, for that, he should be held responsible.

But a sentence of incarceration is not necessary. The defendant has never been convicted of any offense prior to this case. Though he certainly was sloppy in his job at Riverview, there is no evidence to suggest that his errors caused a firearm to be sold to a felon or that he was responsible for knowingly transferring firearms to prohibited individuals. Instead, it appears that the defendant received poor training at Riverview and knew very little about the regulations governing federal firearms sales prior to becoming employed at Riverview. It also appears that the defendant now understands the importance of complying with the federal firearms regulations. And, because the defendant has agreed not to apply to be an FFL or a responsible party for an FFL during his entire probationary period, there is no concern that he will continue working in the business of

selling firearms for the foreseeable future.

## III. CONCLUSION

For the reasons stated above, the Government respectfully asks the Court to adopt the factual findings contained in the PSR and impose a guideline sentence of three years' probation.

> Respectfully submitted,
>
> DEIRDRE M. DALY
> ACTING UNITED STATES ATTORNEY
>
> /s/ Robert M. Spector
> ROBERT M. SPECTOR
> ASSISTANT UNITED STATES ATTORNEY
> FEDERAL BAR NO. CT18082
> 157 CHURCH STREET; 25th FLOOR
> NEW HAVEN, CT 06510
> 203-821-3700

CERTIFICATION

I hereby certify that on September 27, 2013, the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Robert M. Spector
ROBERT M. SPECTOR
ASSISTANT UNITED STATES ATTORNEY